1  JANUARY SCHOFIELD

2  4429 East Village Rd. #410

3  Long Beach, CA. 90808

4  (661) 369-3206

5  **PLAINTIFF IN PRO PER**



**FILED**
CLERK, U.S. DISTRICT COURT

10/11/23

**CENTRAL DISTRICT OF CALIFORNIA**
BY: _____mz_____ DEPUTY

6

7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9

10  JANUARY SCHOFIELD, and

11  individual,

12  　　　　　PLAINTIFF

13  v.

14

15  COUNTY OF LOS ANGELES, et al.,

16  　　　　　DEFENDANTS

Case No: 2:22-cv-05590-JGB (AS)

PLAINTIFF'S OPPOSITION
(DOCKET NO. 58) AND MOTION
TO COMPEL; AND, FOR ENTRY
OF A PROTECTIVE ORDER

17

18  **TO THE HONORABLE COURT:**

19  　　　　Pursuant to the Court's order of October 4, 2023, Plaintiff January

20  Schofield ("Plaintiff") hereby submits her response to this Court's order. Plaintiff

21  hereby objects to Defendants' request for a stay as set forth in their Case

22  Management Report. Plaintiff asserts a Motion to Compel County of Los Angeles

23  to Produce Juvenile Case Files/Records; and, for Entry of a Protective Order.

24  **I. TWO INITIAL ISSUES.**

25  　　　　Plaintiff wishes to make two initial points to the Court.

26  　　　　*First*, this motion seeks to cure the concern raised by the Defendants in their

27  Case Management Report given the fact that this Court has full authority to order

28  production of the juvenile case file. Moreover, in Plaintiff's mother's case, Susan

January Schofield v. County of Los Angeles, et al.　　　　　Case No: 2:22-cv-05590-JGB (AS)

PG. 1
OPPOSITION AND MOTION TO COMPEL

Schofield, it has taken over a year while pending a decision from the juvenile court to release such records. There is no clear time frame as to how many weeks, months, or years that it would take for the juvenile court to complete this process which impairs Plaintiff's ability to prosecute this case.

*Second*, suits based on familial association under the First, Fourth, and Fourteenth Amendment may not be so rare as to be "unheard of," but are a very small sliver of civil rights litigation, unique in so many ways from other types of civil rights actions. For that reason, much detail is given herein about the juvenile dependency court process out of an abundance of caution that the Court may not have personal familiarity. Also, the term "DCFS" refers to the Los Angeles County Department of Children and Family Services and is the County agency that employs defendants.

## II. INTRODUCTION, BACKGROUND, AND CONTEXT

As the First Amended Complaint ("FAC") at Dkt. 19 makes clear, this is a case that involves conduct of personnel of DCFS and an ensuing juvenile dependency case. For that reason this matter involves obtaining juvenile case file records. *Court* records and *child welfare agency* records (DCFS here) are indisputably significant documents, as they are in *all cases* involving claims of unlawful removal and continued detention of children from their parents, and/or fraud in juvenile dependency proceedings. [See G.C. §820.21; *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017)] Agency and Court records are the sum total of "juvenile case files" as defined by California Rule of Court 5.552.

Court proceedings – at least those parents are entitled to notice of – are initiated by the filing of a Welfare & Institution Code §300 Petition ("W&IC"). "Non-detained" Petitions can also be filed, but their numbers are dwarfed by warrantless removals and those accomplished by obtaining an ex-parte warrant to remove; warrant use has grown immensely in the past 10 years or so. Indeed in the 2011 *Rafaelina Duval v. County of Los Angeles, et al.* (Case No. BC470714) a DCFS

social worker had removed the child without a warrant.[1] If removed by any method before court involvement or a protective custody warrant, the first hearing in juvenile court is commonly referred to as a Detention Hearing. [W&IC §319] Here, the minor plaintiff was indeed removed with a fraudulent warrant.

California's W&IC §827 governs the access, release, and use of juvenile case file documents _in California Superior courts_. However, please note that per §827, parents and children are _entitled_ to possess a copy of every document in the juvenile case file and no motion is required to receive those copies. [Id. (a)(1)(C)&(D), & (a)(5) re: receipt of copies][2] Proceedings brought to obtain the files are commonly referred to as filing an "§827 Petition." They are submitted to the same court that presided over the juvenile matter.[3] The judicial officers are often confronted with the conflict of allowing Plaintiffs access and use of records that support the proposition that the judicial officer was misled by fabricated evidence by the social workers. That circumstance alone is a potential conflict.

Far more concerning, is the legitimate view that juvenile court judges generally agree with whatever position the child welfare agency has taken, adding to the process, one has the most undesirable roads to take through those same dependency courts to obtain records unquestionably relevant to the civil rights complaint but potentially damning to the individual defendants who appear in those Courts with those judges nearly every day.

DCFS employees are in and out of juvenile dependency courtrooms in the County of Los Angeles in front of the same judges all day every day, as their County Counsel.[4] In juvenile dependency courtrooms across the state the same social

---

[1] Defendants appealed the jury's decision to award Rafaelina Duval $3.1 million in compensatory damages, but instead settled in a $6 million payout following a board vote in June 2017.

[2] The _truth_ is that parents are routinely denied access to their own files despite the law.

[3] It is NOT being claimed that the exact same judicial officer that presided over the juvenile case related to claims in the civil action is _always_ the one hearing the Petition.

[4] Plaintiff is friends with two other parents who have gone before the same juvenile judge as her: (1) Kristen Michelle Joseph (Case No. 2:23-cv-08230); and (2) Raneisha Hubbert (pending the writing of her Complaint with similar claims). In another related instance, another one of Plaintiff's friends, Marissa Hernandez (Case No. 2:21-cv-07858), she is also now sharing the same juvenile judge as Kristen Michelle Joseph.

workers, County Counsel, and "appointed attorneys" (attorneys contracting with and paid by the County through a low cost bidding process to provide representation to minors and parents unable to afford representation)[5], see each other day in and day out. Some of these day-to-day interactions last decades; same judges, same attorneys, but different families, although it should be noted that juvenile court judges generally serve only two-year appointment.

These individuals operate in a system protected by confidentiality laws that are believed by many to foster daily abuse of families, of power, and of constitutional rights. Horrors of the "system" are readily available for review and understanding (to some degree) on a simple Google search[6], or as of 2023 available on Netflix[7] as a number 1 rated docuseries in the U.S. This system *clearly* blunts zealous advocacy. There is a "fraternity/sorority effect" that is undeniable to any "outsider" who witnesses the reality.

Some predicates of juvenile dependency law on their face run counter to the most basic principles of due process and are an anathema to public <u>and</u> personal accountability (literally the reason for 42 U.S.C. 1983 and private attorney generals), separate and apart from how much *worse it actually is in practice* in dependency courtrooms across the state. Some examples of these dark shadows on liberty are offered; there are many more.

**<u>Closed courtrooms</u>**. Juvenile dependency proceedings are held in courtrooms which are closed to the public. Even in cases that have no claims of physical or sexual abuse, *even the §827 hearing* (which is *<u>just about having and</u>*

---

[5] In Juvenile court, it matters not if the parents are billionaires, they cannot retain an attorney to represent their children. Only attorneys appearing in dependency courtrooms every day are allowed to be appointed to represent children, the same "county contract" attorneys over and over. Some counties have "independent" panels, still paid by County, any attorney can apply.

[6] On social workers lying the October 7th, 2016 argument in *Hardwick v. County of Orange* in the 9th Circuit is telling. [https://www.youtube.com/watch?v=nZa0LxmFTkI]

[7] In this documentary, an anguished couple in Florida battle authorities for custody of their ailing daughter after being accused of child abuse resulting in the mother's suicide [https://www.netflix.com/title/81349305]

*using the juvenile case file in the federal civil rights matter*) is closed to the public.[8]

**Hearsay Admissible**. After an unknown person makes a child abuse or neglect claim against you, it is permissible to allow hearsay evidence (statements of persons not under oath and made outside of court *are admitted as truth*) to prove the allegations. In addition, the agency must only prove a "prima facie" case of abuse or neglect, which of course means it is all deemed to be "true." [W&IC §319; *In re Raymond G.* (1991) 230 CA3d 964] Attorneys can request an expedited evidentiary hearing on the detention issue, then the court can opt to grant that request (and set the hearing in 3 days) or roll it into a jurisdiction hearing to be heard within ten days. [W&IC §321] When children are detained, trial is by statute to be held in 15 judicial days. [W&IC §334][9]

According to a 1999-2000, 15-month study of 2,857 children taken from their parents without a warrant, only 86 (approximately 3%) were returned to their parents within 24 hours; and some of those returns were unilateral by the agency before anyone went to court, meaning the numbers returned by the Court were even lower. Addressing the pre-court returns, a law review author noted,

> "[Agency's] success rate under Florida's pre-deprivation review model thus closely approached ninety-eight percent. Remarkable as it may sound, Florida's judges found that [Agency] correctly estimated probable cause in ninety-eight out of every one-hundred cases." [Mark R. Brown, Rescuing children from Abusive Parents: The Constitutional Value of Pre-Deprivation Process, 65 OHIO ST. L. J. 913, 925-6 (2004)]

The study results reveal the weighty institutional bias in favor of the child welfare agency in the juvenile dependency system.[10] It is happening everyday across

---

[8] In this case, Plaintiff herself denied any claims of sexual abuse at all, so there would be no reason for a concern about her "privacy" interests. It's noteworthy that Plaintiff's mother, Susan, was allowed to have her parent advocate in a recent court proceeding only after Susan submitted to the social worker.

[9] Statutory deadlines are routinely ignored. *See, e.g. Renee S. v. Superior Court*, 76 CA.4th 187, 196 (1999), and *Jeff M. v. Superior Court*, 56 CA.4th 1238, 1239, (1997), as modified (8/97). (See also, *Judith P. v. Superior Court*, 102 Cal. App. 4th 535, 126 Cal. Rptr. 2d 14 (2002.))

[10] This is consistent with the experience of Plaintiff, who has routinely heard from social workers that children are "never" or "rarely" returned at a detention hearing after being removed from their parents. In almost every social connection Plaintiff has made with other families, the children were not returned at the detention hearing.

this Country, and it is appropriate to be gravely concerned about getting to the truth.

42 U.S.C. was enacted to empower and entice private attorneys to take private suits against government agencies too numerous and vast for the federal government itself to police; from which the term "private attorney general" sprang. Attorneys and pro se litigants handling cases against child welfare agencies for unlawful removal or detention of children are pursuing cases under 42 U.S.C. 1983 where the fundamental liberty interests are at stake, rights of familial association, parental care, custody, and control of their children. Plaintiff submits that the §827 process described above is an impediment, if not clear and present danger, to vindicating victims rights in these cases, cases which are in the public interest and benefit not only the particular plaintiff but the general public. [*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)] Private suits brought by these "private attorney generals" have been cited by the U.S. Supreme Court as "critical" to ensuring compliance with federal legislation and respect for civil rights. [*Cannon v. University of Chicago*, 441 U.S. 677, 705-706 (1979) private suits are fully consistent and sometimes necessary to orderly enforcement of the law.]

It is abundantly clear under the law that Plaintiff is not required to follow the onerous and unfair §827 process described above in order to obtain juvenile case files to use in a civil rights action, and that this Court has full authority to order production of the juvenile case file.

## III. ARGUMENT

### A. This Federal Court Absolutely Has Authority To Order Disclosure Of The Juvenile Case Files and Absolutely Should

The issue addressed herein is the issue of this Court's authority to order the production of juvenile case file, and that a Federal Court can do so is beyond cavil. FRCP 1, first statute in the Federal Rules of Civil Procedure, makes it incumbent

upon the Court and the parties to "secure the *just*, *speedy*, and *inexpensive* determination of every action and proceeding." Plaintiff submits that none of those principles are satisfied by the state dependency court process.

Other civil rights attorneys who specialize in this same subject matter have obtained orders of this nature previously in two different District Courts. This expedited the ability to conduct meaningful and thorough discovery for all parties concerned and provided due process that was/is the gravamen of every suit against these child welfare agencies. In *Monteihl v. County of Los Angeles*, 2:10-cv-08183-SVW-JEM (Central Dist.), at Dkt. 16, the court (Hon. Steven W. Wilson) ordered submission of a proposed order – and signed it. In *Baker v. County of Los Angeles*, 2:11-cv-05550-GHK-PJW (Central Dist.), Judge Patrick J. Walsh ordered records produced by DCFS. [Dkt. 66 – Note Federal case filed 7/6/11 – Dkt. 66 filed 9 months later, 4/6/12] The same was accomplished by Stipulation and Order with opposing counsel in the case of *Xoss v. County of Los Angeles*, 2:12-cv-01400-PSG-RZ (Central Dist.), [Dkt. 44] Same order was obtained, over opposition, in *Sigal v. County of Los Angeles*, Case No. 17-CV-04851-RGK-AGR (Central Dist.). [Dkt. 68]

Finally, in the case of *Keilch v. Suenia Romero* (County of Santa Clara), 15-CV-01526 (Northern Dist.). First, the Federal Court granted a Stipulation Re: Juvenile Case Records (like the proposed order here) [Dkt.17] But when served, the juvenile court presiding judge wrote a letter to the Federal Court (essentially) complaining about the order and asserting state court primacy over the issue of juvenile case file access and distribution, therefore the Federal judge requested a joint statement briefing on the topic. [Dkt. 21] Notably, *defendants' counsel* – County Counsel for Santa Clara – did the most strident job advocating for the release of the records by order of the Federal Court in the joint briefing. [Dkt. 24] The Federal Court lifted the stay imposed by Dkt. 21 receiving the attorneys briefing and reinstated its order that the documents be produced. [Dkt. 25]

1    The cases just cited are just those handled by civil rights attorney, Robert

2    Powell. There are other attorneys who handle these cases frequently, including

3    Shawn A. McMillan and Donnie R. Cox, as well, however, it is currently unknown

4    to Plaintiff in which cases these other attorneys obtained similar orders.

5    California W&IC §827 establishes the confidentiality of juvenile case files

6    and permits only certain individuals to inspect such files without prior leave of court.

7    California Rule of Court 5.552 defines "juvenile case file" broadly and includes all

8    documents filed in a juvenile court case; all documents prepared by or made

9    available to social workers; and all material admitted into evidence at juvenile court

10   hearings.

11   In federal question cases, such as this matter, privileges are determined

12   under federal common law. FRE 501. <u>There is no privilege for juvenile records under</u>

13   <u>federal law.</u> The Ninth Circuit has held that district courts may order the disclosure

14   of juvenile court records notwithstanding state law. [*Gonzalez v. Spencer*, 336 F.3d

15   832, 835 (9th Circ. 2003), overruled on other grounds in *Filarsky v. Delia*, 132 S.

16   Ct. 1657 (2012)]

17   In fact, federal courts routinely order production of information deemed

18   private under California statutes. Most notably are peace officer personnel files,

19   which enjoy strict statutory protections, and require a motion from the requesting

20   party and court order for production.[11] Federal courts reject this statutory process in

21   favor of disclosure in response to a discovery request. [*Kelly v. City of San Jose*, 114

22   F.R.D. 653 (N.D. Cal. 1987); *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal.

23   1995)] *Federal courts have reasoned that the federal policy on discovery is a liberal*

24   *standard, and applying California privilege law would severely limit civil-rights*

---

[11] Under California law, the Peace Officer Bill of Rights (POBAR) deems peace officer personnel records confidential and subject to discovery only pursuant to the procedures set forth in Evid. Code §§1043 and 1045. Pen.Code, §§ 832.7, 832.8. A party seeking disclosure must file a written motion, describing the type of records or information sought and provide affidavits showing good cause for the disclosure, setting forth its materiality to the pending litigation and stating on reasonable belief that the identified agency possesses the records. Evid.Code § 1043. The court must then make an *in camera* examination of the information produced by the agency and exclude disclosure of certain material. Evid.Code, § 1045 (b).

*plaintiffs from gaining access to the police files in dispute.* [*Soto*, 162 F.R.D. at 609, fn. 2] The privacy interests at stake can be protected by a "tightly crafted" protective order that can limit who has access to the sensitive information. [*Id.* at 662] The proposed Order submitted to this Court has such a protective order.

Here, Plaintiff is not requesting anything from the juvenile case file that would be prohibited from release or disclosure under the §827 process, not a single document.

In a Northern District Court of California case, the court held that §827 does not bind federal courts, citing *Maldonado v. Secretary of Calif. Dept of Corr. & Rehab.*, 2007 WL 4249811 (E.D. Cal. Nov. 30, 2007).[12] In that case, the district court ordered release of documents pertaining to a minor who died while in custody of a youth correctional facility after finding that *a protective order would remedy any concern about privacy rights.* [*Id.* 7]

While this Court is not "bound" by California law pertaining to juvenile records, it is noteworthy that *even if* confidentiality of juvenile case files applies, *it is not absolute* even under state law. [*In re Keisha T.*, 38 CA.4th 220 (1995)] In fact, §827 contemplates that inspection by third parties is necessary. [*See, Foster v. Superior Court*, 107 CA.3d 218, 230 (1980) – in a criminal action so the defendant could exercise the constitutional rights of confrontation and cross examination; *Navajo Express v. Superior Court*, 186 Cal.App.3d 981, 985 (1986) – in a civil action brought by the minor]

Thus, this Court has the authority to make the Orders requested by the Motion.

---

[12] District courts have recognized the jurisdiction of a federal court to make such orders. *In re Anthony H.*, 129 Cal. App. 4th 495 (2005), was a case in which a district judge denied a request for disclosure of a juvenile case file on the ground that the juvenile court was vested with exclusive authority to decide whether to disclose the records. However, that analysis was then rejected in *Horn v. Hornbeak*, 2010 WL 1027508 (E.D. Cal. March 18, 2010), on the ground that federal courts are not bound by state law, and indeed the Court making that decision cited *Gonzales*, 336 F.3d at 834-35 and *Maldonado*, 2007 WL 4249811 at *5.

**B. Plaintiff Has Access To The Juvenile Case File But Defendants Do Not; And The §827 Petition Process Is Inconsistent With Federal Discovery Requirements.**

A minor and that minor's parents, like Plaintiff herein, can theoretically inspect the juvenile case file without an order. [W&IC §827(a)(1)(C) and (D)] They can also – again, in theory – receive a *copy* of their juvenile case file. [§827 (a)(1)(C)&(D); see (a)(5) re: receipt of copy] In contrast, Defendants' counsel – *even County Counsel* in a closed case – cannot **legally** inspect records because they are not "actively participating in criminal or juvenile proceedings involving the minor." [§827(a)(1)(E)] Should be no surprise, counties do ignore this rule.

A County Counsel for the County of Stanislaus – now a judge there – is a defendant in a lawsuit brought by civil rights attorney, Robert Powell, for handing out an entire unredacted juvenile case file to a private outside law firm. [*See, Nunes v. Carrie Stephens, et al.*, 19-CV-00204-AWI-BAM] This also happens in San Diego County. [See, *A.C. v. County of San Diego* 18-CV-02227, So. Dist.] These realities add to the legitimate concern about fairness aforesaid.

In theory, Plaintiff should have access to her juvenile case files pursuant to §827 in its entirety. In theory, Defendants' retained private counsel cannot even hear about the juvenile proceedings until their own §827 process is complete, and no documents may be used by either party in the federal case until a protective order is in place. In practice, parents are frequently denied access to their juvenile case file and defendants, meaning their attorneys, already have access or are given access unlawfully.

This dichotomy about access to records under §827 creates several unworkable discovery problems in cases such as this, where the minor elects to bring a civil-rights action against social workers for the handling of the dependency matter

and enforce their rights.[13]

**First**, the §827 petition process is *vastly inconsistent* with the broad scope of discovery under the Federal Rules. [FRCP 26(b)(1); *Soto*, 162 F.R.D. at 610] Under California Rule of Court 5.552(e), the juvenile court can withhold the juvenile case file, in whole or in part, if it deems such withholding *necessary* to protect the privacy rights of the minor.[14] In federal question cases, federal courts are required to *balance* privacy interests against the need for discovery to determine whether privileged documents are discovery. Also, this balancing approach is pre-weighted in favor of disclosure. [*Kelly*, 660]

A juvenile court considering a petition pursuant to §827, however, must err to the side of nondisclosure. *Pack v. Kings County Human Services Agency*, 89 Cal.App.4th 821, 829 (2001). This is a direct conflict that hinders timely pursuit of representation in cases such as this, and undermines the "merits" Federal Courts strive everyday to reach, or at least provide a forum for both defendants and plaintiffs to reach the merits of their claims or defenses. Further, is an impractical and unnecessary conflict, where, as here, the child herself – desires the records to prove her case.

Under what other area of law is a child who is *not* a ward or dependent of the Court (as here), have to give up their rights – and the child's parents give up their rights – to decide what is in the child's best interest in terms of their "privacy"? The whole concept throws the rights of parents and children on its head yet again, in cases like this where Plaintiffs have already lived through an experience where they often feel beaten about the head and neck and are left wondering things Plaintiff and her social network have heard too many times to count – "How on Earth does this happen in America[,]" and, "I would never have believed it until it happened to us."

---

[13] This should be a particular concern for Defendant's counsel, who in theory may not receive the records relating to the claims against their clients until over a year after the action is filed. As the case of *Susan Schofield v. County of Los Angeles, et al.* so eloquently demonstrated, this is indeed the case. [2:22-cv-04332-JGB (AS)]

[14] In this instance, Plaintiff is no longer a minor and waives her right to privacy in order to pursue this legal action.

**Second**, federal discovery rules require parties, at the outset of litigation, to complete initial disclosures providing "a copy – or description of by category and location – of all documents . . . . that disclosing party has in its possession, custody, or control and may use to support its claims." F.R.C.P. 26(a)(1)(ii). This is impossible here because Defendants cannot inspect their own records – nor can their attorneys – without the juvenile court's permission. Because the §827 process can take inordinate amounts of time, the case remains on the federal court docket, memories fade, and costs accrue while the parties wait. [15]

**Third**, the concept that the juvenile court is the arbiter of what is material to the federal litigation does not square with federal law. Under §827 and Rule 5.552, the parties must establish *good cause* for disclosure. This showing is incompatible with FRE 402, which states that materiality *should have no part in construing* the Federal Rules. *Soto*, 162 F.R.D. at 609.

**Fourth**, under §827, the burden of overcoming confidentiality is placed *on the party requesting the petition*, whereas *under federal law, the burden is on the party opposing discovery*. [*Miller v. Pancucci*, 141 F.R.D. 292, 298-9 (1992) (citing *Blankenship v. Hearst Corp*. 519 F.2d 418, 429 (9th Cir. 1975))] This is a completely different approach, and obviously one more designed to liberalize discovery, and get to the truth.

It is not safe to assume that the juvenile court has a unique vantage point to know or understand what records are relevant to civil rights claims, it is in fact an argument without foundation at all. At no time does a dependency court decide whether a party's constitutional rights have been violated. [16]

---

[15] It is axiomatic that, as time passes, it becomes harder for Defendants to defend the action as witnesses become unavailable and memories fade. See *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (passage of time can prejudice a defendant).

[16] This statement does not include the conclusions of juvenile courts on occasion that indicate a parent did not get proper "notice" of a proceeding, an inherently "constitutional" issue.

January Schofield v. County of Los Angeles, et al.                                    Case No: 2:22-cv-05590-JGB (AS)

PG. 12
OPPOSITION AND MOTION TO COMPEL

## C. **More Practical And Significant Issues With Juvenile Court §827 Process**

There are additional reasons to those noted above as to why this Court should adopt the Proposed Order as the Order of this Court. The list below will touch briefly on those reasons:

1 – <u>Time</u>: Requests under W&IC §827 routinely take months to process AFTER an Order requiring their production. The proposed Order requires the documents be prepared for copying by a licensed photocopy company within 40 days. That company can scan them on-site, leave the Clerk a copy to be held in case of disputes over redactions or withheld documents.

2 – <u>Redactions & Missing Documents</u>. Plaintiff has read declarations from the aforementioned civil rights attorneys who have often seen that certain documents received in the juvenile proceedings are not included in the §827 production in their own cases where a federal civil rights suit follows the juvenile dependency proceeding.

In *Ibraham v. County of Los Angeles*, 18-CV-06013-CBM-SK (Central Dist.), the court approved a stipulation between counsel allowing the plaintiffs' counsel to produce juvenile case file documents obtained by the associated plaintiffs' counsel to defendant's counsel, to include transcripts and the often very important "supervised visitation logs," that did not arrive with the §827 production. [Dkt. 117 – Stipulation & Dkt. 118 – Order][17]

3 – <u>Unfamiliarity with civil rights law</u> causing uniformed and potentially case-altering production decisions as to documents from the juvenile case file.

4 – <u>No declaration of custodian of record</u>, no averment from any source as to the production being thorough or complete or who will be responsible if it is not.

5 – <u>No privilege log</u> given to determine the basis for documents withheld

---

[17] It is not uncommon that counties, including County of Los Angeles, do not keep the underlying sworn statements in support of an application for a warrant for removal in the court file! Parents and children may seek the entire file, yet never see one of the most important documents in the case!

or redactions made; the significance of this lacking information is immeasurable.

      6 – <u>Transcript issues</u>. Frequently, the juvenile court does not even address the issue of transcripts, which requires a separate application be made.

      7 – <u>Documents produced</u> by the Superior Courts are usually in paper. The Order's proposed method results in # stamped PDF documents, so all counsel are on the "same page."

      8 - <u>Conflict with federal law</u> burden meeting obligations on establishing confidentiality.

      9 – <u>Neutrality</u>. The proceeding/decision is made by a truly neutral court with zero of the fraternal or sorority effect at play.

      10 – <u>Added expense.</u> The state court process adds expenses to the case.

      11 – <u>Interference with 42 U.S.C. 1983</u>. The state court process hampers the private attorney general role, which brings the intent of 42 U.S.C. 1983 to bear in civil rights matters.

      12 – <u>The Federal Court does not end up deciding discovery</u>. Refusing the orders requested herein creates a situation where another court is not only making decisions on what documents are relevant or are felt by that Court to have "substantial relevance" to a civil rights matter (as mentioned, that alone is <u>*not*</u> the standard in a federal matter), but where the presiding court in the civil rights matter, this Court, is prohibited from conducting some of its most solemn and statutory obligations, which are applying federal discovery rules and federal discovery precedent not to mention civil rights experience, to the case this Court is handling.

## D. <u>California Reporting Party & Foster Care Placement Confidentiality Cannot Be Applied, Doing So Epitomizes Denial of Due Process</u>

      Given the authority already provided on this Court's authority to make orders releasing juvenile case files, Plaintiff has included in the Proposed Order

provisions for what can be redacted by the agency. The redactions are limited to social security numbers and dates of birth for *anyone* in the documents.

Plaintiff notes that the Proposed Order submitted herewith does not allow DCFS to withhold the identity and information of the "reporting party." Indeed keeping this obvious contemporaneous to the removal event witness from Plaintiff is another of the practices under state law that render the juvenile dependency system constitutionally deficient on its face! Civil rights litigants not being privy to the reporter identity and contact information creates an irremediable conflict in the presentation of evidence at trial in their federal civil rights case which if not handled in the manner argued herein is manifest error.[18]

**First**, allegations *from* the reporting party may appear several times in the juvenile case files, such as in notations of the initial call to a "hotline," and thereafter in conversations with an "emergency response" social worker in DSLs. The unknown person(s)' allegations are occasionally inserted right into the WI&C 300 Petition! The defense will absolutely want to use anything this unknown-to-plaintiff's witness may be alleged to have said/reported because of course it supports that all they did was appropriate and altruistic. As previously noted, hearsay of this nature is used in dependency courtrooms every single day. The claimed justification for hiding identities is removing retaliation concerns to persons coming forward to report.[19] Yet weight of some speculative retaliation cannot conceivably outweigh the right of parents and children to pursue redress for violations of their familial association rights and all the damages that flow from such violations, lest due process be discarded completely.

In these familial rights violation cases, there is a longstanding requirement,

---

[18] The issue of whether *mandated* reporters or not mandated reporters is of zero significance to this issue and the documents containing information on the reporting party would virtually never be less than two – the "screener" documents (hot line call), and the Detention Report.

[19] As an irony rich aside, "retaliation" is often the reason a CPS call is made! Examples, a landlord-tenant dispute, an ex-spouse/girlfriend/boyfriend/lover spat. This retaliation aspect is such a problem in family law cases, California passed statutes to discourage it. [F.C. 3027]

an actual element of claims involving violation of familial association rights – in more than just the Ninth Circuit - of social workers (and police) doing a "*reasonable investigation*" before taking actions of the most psychologically damaging nature *to all family members* when removing children. [*Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir.1997) – serious allegations of abuse which are *investigated* and *corroborated* usually gives rise to a reasonable inference of imminent danger; *Good v. Dauphin County Soc. Serv.* [ ], 891 F.2d 1087, 1093 (3d Cir.1989) (citing *Mincey v. Arizona*, 437 U.S. 385, 393, (1978)); *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir.1988) – child abuse investigator has *duty to investigate information* that would clarify matters prior to separating children from parents); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) – duty to "*make a thorough investigation* and exercise reasonable judgment before invoking the awesome power of arrest and detention[;]" *see also, Wallis*, 1136; *emphasis*]

Against this backdrop is a state law which purports to bar civil rights litigants from knowing the identity and contact information of the very person(s) whose report instituted the agency's involvement in the Plaintiffs' lives! The person who saw, or heard, and reported something they believed constituted a concern for child abuse has their identity kept from Plaintiffs!? The proposition should be shocking! What if they were incompetent, or simply retaliating against the parent? Or, as has been the experience of Plaintiff and her social network on many times, what if they *never said the words attributed to them by the social worker*? And yet, Plaintiffs are not allowed to know who that person is so they can talk to or depose them?

It is irreconcilable that federal decisional law makes reasonable investigation an element of these civil rights claims, but the identity of the person making the initial allegations, the initial contact, is kept from Plaintiffs under state law? [*See Wallis*, 1138]

Also, if one of these cases goes to trial, and the position this identifying

information can be withheld from the plaintiff per state law has prevailed, do all of their statements in the records get redacted for trial? Or are those who testify forbidden to say a word about the statements of this person(s) and their comments redacted? Such steps would literally be required by due process. The hearsay exceptions of F.R.E. 803 are numerous enough that an attorney – or guided pro se litigant, under the lenient standard – could potentially navigate a witness through the hearsay obstacle using one or more of the exceptions to bring right into trial not just hearsay, but hearsay from a person whose identity the plaintiff never knew, and never had a chance to examine. Not due process! Due process requires both sides have access to this evidence and information.

A most poignant quote from the case of *Higgason v. Superior Court*, 170 Cal. App. 3d 929, 946 (1985) applies here with force,

> There are few principles of human affairs more self-evident than this: The unverified story of an untested informer is of no more moment than a fairy tale on the lips of a child, and the same tale from an anonymous tattler is worth much, much less.

There is no due process for Plaintiff unless full and complete disclosure of the identity and contact information of reporters is provided to both sides. These cases are often the only light shown on the systemic abuse of families, the only place of remedy for the family victims, and only place for public accountability for the rest of us. The child welfare agencies will fight tooth and nail to stop this from happening, always touting their altruistic purpose and goal "to protect children." In the words of Henry G. Bohn in 1855, "The road to hell is paved with good intentions." [A Handbook of Proverbs, Henry G. Bohn (1855)]

**E. State Immunity Laws Do Not Provide A Shield From 1983 Claims, Nor Should Reporter & Foster Care Identity And Contact Information Be Allowed To Be Shielded From Plaintiffs; Federal Preemption Applies**

The Supreme Court has repeatedly held "a state law that immunizes government conduct otherwise subject to suit under § 1983 is *preempted* even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." [*Felder v. Casey*, 487 U.S. 131, 139 (1988); see *Martinez v. California*, 444 U.S. 277, 284, fn. 8 (1980)- ["[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law"]. Under preemption principles, state statutory immunities for child abuse investigations may not ordinarily be asserted as a defense to a §1983 claim. [*See Good v. Dauphin Cnty Soc. Serv. for Children and Youth*, 891 F.2d 1087, 1091 (3d Cir.1989) – child protective services law could not be asserted as a defense to 1983 claim alleging that defendants committed unlawful search during abuse investigation; *Wallis v. Spencer*, 202 F.3d 1126, 1143-4 (9th Cir. 1999) – court erred in "appl[ying] state statutory immunities for child abuse investigations to … §1983 action"] It is the same supremacy considerations that apply in this situation.

As pointed out next, in both categories of witnesses – reporting parties and foster providers, <u>California law itself allows release of their identifying information</u>.

## 1. <u>Reporting Party Can Be Provided Under State Law</u>

Under California law, P.C. §11167(d)(1) provides the identity of reporters may be disclosed "by court order." The statute places no restriction on that authority. Moreover, P.C. §11167.5(b)(1) states that reports of suspected child abuse or neglect and information contained therein may be disclosed to "[p]ersons or agencies to whom disclosure of the identity of the reporting party is permitted under §11167." Plaintiff in the instant case is a "persons" whom, with a court order, based on a showing that their right to pursue their civil rights case outweighs any right the reporting party has to confidentiality, should be granted access to the identity of the

1   reporting party(s) so they may be cross-examined.

2          "A juvenile court has broad and exclusive authority to determine whether,

3   and to what extent, to grant access to confidential juvenile records." (*In re R.G.*,

4   2000) 79 Cal.App.4th 1408, 1413; (*In re Keisha T.*, 1995) 38 Cal.App.4th 220 at

5   pps. 225-226, 240). The rules behind W&IC §827 recognize "there may be situations

6   in which competing interests require the disclosure of some material in a juvenile

7   court record. They all recognize it is the juvenile court that is in the best position and

8   statutorily authorized to make the decision of whether and what material should be

9   released." (*In re Keisha T., supra*, 38 Cal.App.4th at p.233). These competing

10  interests "may tip the balance in favor of disclosure." *Id*. at 235, *Navajo Express v.*

11  *Superior Court* (1986) 186 Cal.App.3d 981, 985 (disclosure ordered for use in a civil

12  action brought by a minor).

13         As this Court has the authority to make the orders requested, releasing

14  juvenile case files, it clearly may do so given state law does not prohibit doing so

15  either.

16

17       **2.**   **Foster Care Placement Information Also Must Be Released**

18

19         DCFS redacted the identity and contact information of the minor's foster

20  care providers pursuant to Health and Safety Code §1536(b). The statute states that

21  "to protect the personal privacy of foster family homes … and to preserve the

22  security and confidentiality of the placements in the homes, the names, addresses,

23  and other identifying information of facilities licensed as foster family homes …

24  shall be considered personal information for purposes of the Information Practices

25  Act of 1977." This privilege is far from absolute. The statute and the Information

26  Practices Act carve out many exceptions for which persons may receive private and

27  personal information, because the legislature recognized that there are many

28  legitimate needs for this information that outweigh the privacy interests of the foster

January Schofield v. County of Los Angeles, et al.         Case No: 2:22-cv-05590-JGB (AS)

PG. 19
OPPOSITION AND MOTION TO COMPEL

care providers. The Information Practices Act provides that "[a]n agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed, as follows: … To any person pursuant to … court order … if, before the disclosure, the agency reasonably attempts to notify the individual to whom the record pertains, and if the notification is not prohibited by law." (Civil Code §1784.24). The Court has the authority to order this disclosure, and the agency to provide the information.

If the Court weighs the competing interests at stake, it should find that the interests in this case favor disclosure. The minor as well as the parents require the information to properly vindicate violation of their constitutional rights. This need outweighs the privacy interest of the former foster care providers, especially given that they no longer have placement of the child, and they do not face any risk of harassment from the parents. They are percipient witnesses with valuable information pertinent to the prosecution of Plaintiff's civil rights claims, such as their communications with the social worker defendants, and their observations and participation in Plaintiff's care and medical treatment, and discussions with Defendants about Plaintiff.

## F.  Prior §827 Information & Belief Regarding The Redaction Issue

Plaintiff has read declarations filed by the civil rights attorneys including Robert Powell, Shawn McMillan, and Donnie Cox, whom have all dealt with the issue of finally receiving juvenile case files after a months (in L.A. over a year is not uncommon), only to find them riddled with redactions and of course, no privilege log even giving a hint of what the claimed basis for redaction might be.

Plaintiff has already mentioned *Nunes v. Carrie Stephens, et al.* (II), which involved claims of unlawful pre-§827 Petition distribution of juvenile case file documents by the County to private counsel. The following is what happened in the

January Schofield v. County of Los Angeles, et al.                                      Case No: 2:22-cv-05590-JGB (AS)

PG. 20
OPPOSITION AND MOTION TO COMPEL

first filing, *Nunes v. County of Sonoma* (I) in the Eastern District, Case #17-CV-00633-DAD-SAB, a case also alleging unlawful interference with familial association rights, that in fact led to learning about the privacy violations alleged in Nunes (II), because a §827 Petition was filed.

Plaintiff submits what is described below is typical of the course and sequalae of §827 proceedings, offered to show what is reasonably likely to occur if this Court will not make the Orders requested, a §827 Petition must be filed in the County of Los Angeles Superior Court.[20]

The original W&IC §827 Petition for *Nunes (I)* was submitted to the juvenile court on December 28, 2017. It included all required documents. As required by CRC 5.552 the Request for Disclosure of Juvenile Case File (JV-570), Notice of Request for Disclosure of Juvenile Case File (JC-571), and a blank Objection to Release of Juvenile Case File (JV-572), were served on all necessary parties/persons ten days prior, on December 18, 2017.

A January 4, 2018 letter was received from Sonoma Superior Court, notifying plaintiffs no records were found *in the court's system* under the name / date of birth provided, returning the original §827 Petition. The clerks' office was apparently unaware that there might be an open Human Services Department of the County of Sonoma ("HSD") file without a corresponding agency file and declined to file the Petition and returned it in the envelope.

On January 6, 2018, Robert Powell sent a letter clarifying that the Request was for "Agency Docs Only," which in fact <u>was stated on the originally submitted §827</u>. It was requested that the §827 packet be filed as submitted, and it was sent back with the letter.

Twenty-five (25) days later, on January 31, 2018, the Petition was filed and a Notice of a hearing set for February 20, 2018 was issued with an Order, which

---

[20] Like this case, *Nunes* did not involve sexual or physical abuse. It's a case about a baby with an almost insignificant subdural hematoma caused by the family's dog, and an over 50-day social worker and policy forced separation that ensued. This case arose from accusations of over- or undermedication.

stated, "The Community Services Agency is directed to appear at the hearing and provide two copies of the records."

February 20, 2018, Robert Powell drove the 82 miles, approximately 1.5 hours from San Jose to the dependency courthouse on Blue Gum Ave. in Modesto. Once in court, the judge announced that HSD had in fact *not provided* the records.

The matter was continued to March 17, 2018.

On April 12, 2018, just shy of four months since the §827 Petition had been filed, the agency's records were received by Robert Powell. They were thoroughly reviewed on April 14. Incredibly, there were **152** separate redactions just within the 22 pages of Delivered Service Logs ("DSL" - chronological notes of contacts made, and actions taken by social workers in a case) and another **53** redactions in the remaining 132 pages of various other documents, including medical records, police reports, and other agency prepared documents, etc.

On May 7, 2018, Robert Powell submitted to the juvenile court a request for orders to receive unredacted - at least less redacted - copies! The pleading was a 10-page declaration after a 2-page form required by the court, detailing thirty (30) pages of exhibits (which were attached) with the redactions. This effort took just over five (5) hours to complete. In addition, though requested in the §827 Petition the court ordered the documents could be released to the defendants' counsel in the civil rights case, the court had failed to address that request in its prior Order, therefore it was requested the court make that order as well.

The matter was set for May 17, 2018, and again, Robert Powell drove the 82 miles for about 90 minutes to Modesto for the hearing. The court issued the Order (filed the next day), granting the documents with only redactions for Social Security numbers, and the (recurring problem in civil rights cases of) redacting the reporting party identities.

That order came out May 18, 2018, **five months after the initial W&IC §827 Petition filing**, and at least two trips to court. Documents were received heavily

redacted. And yet, during the run up to this hearing, in Robert Powell's communications with the County Counsel, it was learned *that the entire unredacted file had been provided to the County's privately retained attorneys*. From that, was the genesis of *Nunes (II)*. One more very troubling thing.

Also, in the case of *Sigal* noted above, the first round of production had numerous redactions and required a Motion to Compel. Same exact thing in the Robert Powell's case of *Scanlon v. County of Los Angeles*, 2:18-CV-07759-CBM-AS (Cent. Dist), numerous redactions, Motion to Compel. In the Declaration of Shawn A. McMillan that Plaintiff read, therein he speaks of how in the case of, "*G.M. v. County of Riverside*, I or one of my associates had to go to Court *twelve times over the course of four years* on the W&IC 827 request in order to obtain a complete and unredacted copy of his juvenile case file."

Indeed, it's critical to note that the Plaintiff is navigating this complex legal landscape as a *pro se litigant*, lacking the specialized legal training and experience that might otherwise aid in a more efficient traversal of this process. This is not merely a procedural hurdle; it poses a significant disadvantage when compared to seasoned attorneys who routinely handle matters of this specific nature. The odds of Plaintiff achieving a favorable outcome under these circumstances are markedly reduced, raising serious concerns about equitable access to justice.

These are not one-off events, one-off stories. These are realities of going through the State courts to get the relevant, contemporaneous records of the underlying events in a case involving violation of familial rights of association. Of course some of these issues vary in intensity/frequency from County to County, but some of these issues, such as the "fraternity/sorority effect," the juvenile dependency laws complained of hereinabove, they span all Counties, and again Plaintiff submits that all of the foregoing issues and problems undermine the vindication of important rights in a colossal way.

### III. CONCLUSION

In conclusion, this Court has the jurisdiction and authority to order disclosure of the juvenile case files. W&IC §827 does not bind federal courts. Additionally, there is good cause for this Court to order disclosure, as the §827 petition process tends to be extremely long, causing substantial delays in timely litigation of the federal case, frequently involves numerous improper redactions, has no verifiability as to being a business record or providing justification for redacted information, contains a burden-carrying posture nearly the exact opposite of burden-carrying responsibilities found in the broad federal discovery rules and case law, and, with the refusal to provide reporting party information, results in documents containing significant hearsay from unknown claimants to be used by civil rights litigants, which is something absolutely inimical to due process.

Although there are legitimate privacy interests at stake, these can be sufficiently protected by the Protective Order provisions included in the Proposed Order submitted herewith.

For the reasons stated above, Plaintiff (1) asserts her objection to Defendants' request for a stay as set forth in their Case Management Report and (2) requests the Court make an order of this Court the Order Re: Production Of Juvenile Case File submitted as Proposed.

**JANUARY SCHOFIELD**

PRO SE LITIGANT

**DATED**: OCTOBER 11, 2023

*January Schofield*

**JANUARY SCHOFIELD**

PRO SE LITIGANT